# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS
ATTORNEY GENERAL


November 16, 1959

Honorable G. Curtis Jackson
County Attorney
Zavala County
Crystal City, Texas

Opinion No  WW-724

Re:  Constitutionality of H. B.
No. 47, Acts of the 56th
Leg., Reg. Sess., 1959, and
related questions concerning
archery hunting

Honorable Andrew P. Johnson
County Attorney
Dimmit County
Carrizo Springs, Texas

Gentlemen:

This opinion is issued in response to your request for an opinion of this office concerning the constitutionality of H. B. No. 47, Acts of 56th Leg., Reg. Sess., 1959, Chap. 189, Page 423, as amended by S. B. No. 49, Acts of 56th Leg., 2nd Called Session, 1959, Chap. 30, Page 146, and the effect on H. B. No. 47, as amended, of H. B. No. 962, Acts of 56th Leg., Reg. Sess., 1959, Chap. 273, Page 589. H. B. No 47 and H. B. No. 962 have been published in Part 4 of Vernon's Texas Session Law Service, 1959, and S. B. No. 49 has been published in Part 6.

The first question of your inquiry reads as follows:

"Is H. B. 47, as amended by S. B. 49, unconstitutional as special group legislation because of the provisions of Sec. 2C, there being no severability clause in the Bill?"

The answer to this question is that Section 2C of H. B. No. 47, as amended, is unconstitutional, but, because the section is properly severable, despite the absence of a severability clause in the bill, the invalidity of Section 2C does not render the remaining provisions of the bill unconstitutional.

S. B. No. 49 only amends H. B. No. 47 to the extent of excluding from its operation certain counties, in addition to those excluded by the provisions of H. B. No. 47 itself, and, therefore, amendatory S. B. No. 49 need not be further considered in answering the questions with which this opinion is concerned.

Section 1 of H. B. No. 47 states in part as follows:

"Article 879h-1

> "There shall be an open season, or period of
> time, when it shall be lawful to hunt, take and kill
> solely with bows and arrows, wild buck deer, wild
> bear, wild turkey gobblers and collared peccary or
> javelina in both the North and South Zones, October
> 1 to October 31 of each year both days inclusive."

Section 1 further prescribes that no bow hunter may have in his possession while hunting any crossbow or firearm or use a bow or arrow other than such as are prescribed and that for certain counties the Game and Fish Commission shall determine the open season for bow hunting.

Section 2C of H. B. No. 47 states as follows:

> "Provided, further, that hunting in Jack, Wise
> and Parker Counties shall be done only by residents
> of those counties."

A declaration of the sovereignty that abides in every state with regard to the game within its borders was made by the Legislature of the State of Texas in Article 871a of the Penal Code, as follows:

> "All wild animals, wild birds, and wild
> fowl within the borders of this State are hereby
> declared to be the property of the people of
> this State."

Therefore, since the game in the State is the property of the people of the State as a whole, laws relating to this property, which restrict the people in the use and disposal of the game, are constitutionally valid only if they are reasonable and are not arbitrary and discriminatory.

Since Section 2C clearly benefits residents of three counties to the detriment of the other residents of the State, who equally own the game involved, the limited hunting authorized in Section 2C can be valid only if it has a proper basis as an exercise of the police power.

Consideration of the matter results only in the conclusion that this authorization would not be a proper exercise of the police power as it has no reasonable basis in conserving the wildlife resources which belong to the people.  Therefore, Section 2C is unconstitutional and invalid as violative of the Fourteenth Amendment of the United States Constitution and Sections 3 and 19 of Article I of the Texas Constitution, which provide that no person shall be deprived of property without due process of law nor denied the equal protection of the laws.

Since Section 2C is unconstitutional and thereby invalid, consideration must be given to the effect of such invalidity on the remainder of H. B. No. 47.  Although H. B. No. 47 contains no severability provision,

the absence of such a provision is not in itself controlling in determining the validity of the remainder of the act.  See Harris County Water Control & Improvement Dist. No. 39 v. Albright, 263 S.W.2d 944,947 (1954); Gilder-bloom v. State, 272 S.W.2d 106,110 (Tex. Crim. 1954); Miller v. El Paso County, 146 S.W.2d 1027,1036 (Civ. App. 1940), reversed on other grounds 136 Tex. 370, 150 S.W.2d 1000 (1941); City of Dallas v. Love, 23 S.W.2d 431, 435 (Civ. App. 1930), affirmed 40 S.W.2d 20 (1931); Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447,454 (1922); Lawson v. Baker, 220 S.W. 260,273 (Civ. App. 1920, writ refused); Young v. City of Colorado, 174 S.W.2d 986,997 (Civ. App. 1915, writ refused); and San Antonio Independent School District v. State ex rel Dechman, 173 S.W. 525,529 (Civ. App. 1915, writ refused), in each of which cases a provision was attacked as being unconstitutional and the court determined that the validity of the remainder of the act was not affected thereby, despite the absence of any severability provision.

The Court in the San Antonio School District case presented a very comprehensive discussion concerning the validity of the remainder of an act containing an unconstitutional provision and on page 529 stated in part as follows:

> ". . . where part of a statute is unconstitutional and the remainder is constitutional, if the two parts can be possibly separated courts should do so, and not permit the invalid part to destroy the whole law.  If, after the elimination of the invalid part of the law, there remains an intelligible and valid statute capable of being placed in execution and conforming to the general purpose and intent of the Legislature, the law will not be destroyed, but held to be valid and binding except as to the excised part."

Examination of H. B. No. 47 by means of this test of its validity results in the conclusion that the removal of invalid Section 2C leaves a statute which is (1) intelligible, (2) capable of being placed in execution, and (3) in conformity to the general purpose and intent of the Legislature. Therefore, Section 2C, which is unconstitutional and invalid, is severable from the remaining provisions of H. B. No. 47, which are valid and effective in view of such severance.

The general purpose and intent of the Legislature in enacting H. B. No. 47 was to provide, first, a season when game could be taken solely with bows and arrows and, second, regulations governing the equipment used in bow hunting.  This intent is obvious from consideration of the provisions of the act and is emphasized by the statements in Section 3, the emergency clause, that there is increasing hunting pressure on game, bow hunting allows more hunting in proportion to the game killed, the number of bow hunters is increasing, and safety laws regulating bow hunting are inadequate.

Certainly the provisions of H. B. No. 47 which would remain after Section 2C is invalidated would be in conformity to these purposes for which H. B. No. 47 was enacted.

Section 2C was not a part of H. B. No. 47 either when the bill was introduced or when committee amendments were adopted upon the bill being reported favorably to the full House. The section was added to the bill just before the bill passed on its second reading, with the bill being immediately passed on its third (final) reading after an affirmative vote of 96-to-8 to suspend the rules to permit such passage.

Since Section 2C is invalid, the result is to eliminate the special privileges for residents of Jack, Wise, and Parker Counties and to leave the general provisions of the act effective in those counties. To ask, is this what the Legislature meant to do when it enacted H. B. No. 47?, is to beg the question. The true test is, do the provisions that remain conform to the general intent of the Legislature in enacting the act? Consideration of the provisions that remain results in an affirmative answer.

Section 2C was an effort to superimpose on general provisions special privileges for a certain class of persons and as such is clearly distinguishable from the effort to prevent general provisions from applying to a certain class of persons, such as was involved in Anderson v. Wood, 137 Tex. 201, 152 S.W.2d 1084 (1941). The effort in the Anderson case statute was to prevent general provisions applying to a particular county, while in the present situation the effort is to secure the full benefits of the act (an open season where none has existed and safety regulations for the protection of bow hunters) plus special privileges for residents of certain counties. Even if we were faced with an Anderson case type of situation, a different conclusion from that stated in the Anderson case might be indicated by Ground Water Conservation Dist. No. 2 v. Hawley, 304 S.W. 764 (Civ. App. 1957, error ref. n.r.e.), a more recent case.

Your question number two reads as follows:

"Does H. B. 962, ch. 273, being passed at a later date than H. B. 47, and becoming effective thereafter, with repealing clause, repeal H.B. 47 so far as Dimmit and Zavala Counties are concerned?"

With regard to this inquiry, the taking of wild life resources in Dimmit and Zavala Counties by bow hunting is regulated by the provisions of H. B. No. 47 insofar as conflicts exist between the provisions of that act and H. B. No. 962.

Examination of the acts involved shows that H. B. No. 47 was given final approval by the Legislature on May 11, 1959; was approved by the Governor on May 20, 1959, and was effective 90 days after May 12, 1959, the

date of adjournment.  H. B. No. 962 was given final approval by the Legis-
lature on May 8, 1959; was approved by the Governor on May 26, 1959, and
was effective on September 1, 1959, by terms of its Section 16.

That portion of Section 1 of H. B. No. 47 which has already been
quoted provided for a statewide open archery season for hunting game, al-
though another portion of Section 1, designated Article 879h-5, provided
that in counties where hunting seasons other than an archery season are
less than 31 days, the Game and Fish Commission shall determine the length
of the archery season and shall set the opening and closing days of such
season.  Section 2 states that all laws or parts of laws in conflict are
repealed and Sections 2A and 2B exclude certain counties from the operation
of the act, although Dimmit and Zavala Counties are not among those so ex-
cluded.

H. B. No. 962 repealed all laws and parts of laws prescribing
open and closed seasons and means and manner for the taking of the wildlife
resources of Dimmit and Zavala Counties.  It further provided that effective
on and after September 1, 1959, and until a subsequent date, the Game and
Fish Commission would provide, by proclamation issued after a hearing was
held, the periods of time and the means, method, place, and manner of taking
wildlife resources of these two counties.

Texas courts have long adhered to that rule of statutory construct-
ion concerning enactments of the same Legislative session which is stated
in Section 2020, Statutes and Statutory Construction by J. G. Sutherland,
Third Edition by Frank E. Horack, Jr., 1943, Vol. 1, pages 484-485:

>"In the absence of an irreconcilable conflict
>between two acts of the same session, each will be con-
>strued to operate within the limits of its own terms
>in a manner not to conflict with the other act.[4]  How-
>ever, when two acts of the same session cannot be
>harmonized or reconciled,[5] that statute which is the
>latest enactment will operate to repeal a prior statute
>of the same session to the extent of any conflict in
>their terms[6]."

Section 2020 as above quoted has been cited with approval in Attorney Gene-
ral's Opinions No. O-5891, at page 7, dated May 30, 1944, and No. V-990, at
page 4, dated January 26, 1950.  The same general rule is stated in Sta-
tutes Section 78, 39 Tex. Jur. 145, which is cited in the Texas case which
was decided on the basis of a fact situation most similar to that which
now confronts us, Ex Parte De Jesus De La O., 227 S.W.2d 212 (Tex. Crim.
1950).

Efforts to simply construe together H. B. No. 47 and H. B. No.
962, as two acts of the same session, prove unsatisfactory in determinat-

ing which provisions of the acts regulate the taking of wildlife resources by bow hunting in Dimmit and Zavala Counties.  Such being the situation, we may rely on the rule stated in the Jesus de la O. case at page 213:

> "The two acts are in irreconcilable conflict, and therefore the latter act, S. B. 425, . . . being the latest expression of the legislature, will prevail over H. B. 656 . . .".

The facts of the Jesus de la O. case were that H. B. No. 656 was enacted by the Legislature on June 21, 1949, and was effective upon its approval by the governor on June 29, 1949.  S. B. No. 425 was enacted by the same Legislature on June 22, 1949, and was approved by the Governor on June 29, 1949, to become effective 90 days after adjournment of the Legislature.

The date relied upon by the court in the Jesus de la O. case to determine which of the acts was "the latest expression of the Legislature" was the date when the Legislature itself finally enacted (approved) the particular act.  This choice was the most reasonable one since the court admittedly is only endeavoring to follow the intent of the Legislature itself in determining which provisions are applicable in a given situation.  Likewise Section 2020 of the Sutherland work refers to "the latest enactment" as governing, and, with every Texas act initially proclaiming "Be it enacted by the Legislature of the State of Texas", the approval of the Legislature constitutes the enacting to which reference is made.

The answer to the question therefore is that, insofar as provisions of H. B. No. 47 and H. B. No. 962 are in conflict, the provisions of H. B. No. 47 govern because that act represents the latest expression of the Legislature, having been finally approved by the Legislature on May 11, 1959, some three days after the same Legislature finally approved H. B. No. 962 on May 8, 1959.

In view of the answers of this opinion to your first and second questions, there appears no need to answer your third and fourth questions. Since under this opinion, with regard to bow hunting, provisions of H.B. No. 47 govern when they conflict with H. B. 962 provisions, Dimmit and Zavala Counties are under H. B. No. 47.

It may be noted that, since there were no other hunting seasons in either county since September 1, 1959, as a result of H. B. No. 962 being effective other than as to bow hunting, the two counties at the time of your request for an opinion were within Article 879h-5 of H. B. No. 47 as counties where the hunting season is less than 31 days.  Therefore, such bow hunting season as would exist in Dimmit and Zavala Counties would be that provided by the Game and Fish Commission by proclamation under the provisions of H. B. No. 47.

This result is consistent with the pattern followed by the Legislature in enacting H. B. No. 47, since all 98 counties whose wildlife resources are under the regulatory authority of the Game and Fish Commission were either completely excepted from the provisions of H. B. No. 47 or are within the less-than-31-day hunting season provision, Article 879h-5. This, of course, means that the wildlife resources of none of these 98 counties were subjected to the automatically applicable October 1-31 bow hunting season provided by Article 879h-1 of H. B. No. 47, but rather would still be within the regulatory authority of the Game and Fish Commission.

## SUMMARY

Section 2C of H. B. No. 47, as amended, is unconstitutional, but, because the section is properly severable, despite the absence of a severability clause in the bill, the invalidity of Section 2C does not render the remaining provisions of the bill unconstitutional.

The taking of wildlife resources in Dimmit and Zavala Counties by bow hunting is governed by the provisions of H. B. No. 47 insofar as conflicts exist between provisions of H. B. No. 962 and H. B. No. 47, which was the latest approved by the Legislature and therefore represents the latest expression of the Legislature.

Very truly yours,

WILL WILSON
Attorney General of Texas

By: Charles D. Cabaniss

Charles D. Cabaniss
Assistant

CDC:aw

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman

Houghton Brownlee
R. V. Loftin, Jr.
W. O. Shultz

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    Leonard Passmore